## Case No. 10,063.

### The NEAFFIE.

[1 Abb. U. S. 465.] [1]

Circuit Court, D. Louisiana. April, 1870.

TOWAGE—COMMON CARRIER LIABILITY—INJURY TO TOW—FAULT OR NEGLECT OF TUG.

1. The owners of a steam-tug or tow-boat, engaged in the business of towing vessels from point to point, but not receiving the vessels or the property on board of them into their care or custody otherwise than is involved in the mere

1 [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

act of towage, are not liable as common carriers in respect of such employment.

[Cited in The M. J. Cummings, 18 Fed. 184.]

2. To charge them for an injury to the tow, such injury must be shown to have resulted from some neglect or fault in the management of the tug.

[Appeal from the district court of the United States for the district of Louisiana.]

In admiralty.

N. H. Armstrong, for libelants.

Carleton Hunt, for claimants.

WOODS, Circuit Judge. The case was this: On May 28, 1866, the steam-tug Neaffie undertook to tow a flat or barge laden with hay from Jefferson City to the flat-boat wharf in the city of New Orleans—a distance of three or four miles. She made fast to the flat and towed her down the stream to said wharf, the master and crew of the flat remaining aboard of her. As she was about landing the flat, the latter collided with another flat made fast to the wharf. In a short time after the collision, the flat towed by the Neaffie sunk. The damage sustained by the sinking of the flat is agreed to be thirty-one hundred and fifty dollars.

The libelants charge that the sinking of the flat was in consequence of the collision, and that the collision was brought about by the carelessness of Cook, the master of the Neaffie; and in argument they allege that the Neaffie was a common carrier, and responsible for all damages to the flat not occasioned by the act of God or the public enemy.

The claimants answer, that when the Neaffie approached the flat for the purpose of towing down to the flat-boat wharf, they found her in a leaky condition, and refused to take her in tow except at the risk of her owners, to which the captain and part-owner of the flat assented. They deny any carelessness on the part of the master of the Neaffie, and deny that there was any collision whereby the flat was damaged; or that the sinking of the flat was the consequence of any damage received by her collision with the other flat lying at the wharf. They allege that the slight impingement of the one flat against the other was caused by a sudden eddy or boil in that part of the river.

In the view I have taken of this case, these are the only facts alleged on either side which it is necessary to recite. The naked fact that the flat of the libelants, while in tow of the Neaffie, did impinge upon the flat made fast to the wharf, and that in a very short time thereafter she sunk, raises a presumption of mismanagement and negligence on the part of the captain of the steam-tug, and fixes a liability for damages sustained upon her owners, unless contrary proof is adduced showing ordinary care and diligence. I have searched the testimony in this case in vain to find any act of carelessness or negligence on the part of the captain of

the Neaffie. On the contrary, the proof shows, to state the result in the mildest form, reasonable care and diligence. No witness speaks of any act done or omitted showing want of skill or care on the part of the Neaffie.

Under this state of facts the Neaffie cannot be held liable for the damage suffered by the flat and cargo, unless she is made responsible as a common carrier. The business of the Neaffie, as the evidence shows, is to tow flats and other water craft from one point to another in and about the harbor of the city of New Orleans. The hire for her services varies according to the bargain made at the time the service is rendered.

A common carrier is often defined to be: "One who undertakes for hire to transport the goods of such as choose to employ him from point to point." This definition is very broad, and in its application to facts is subject to certain limitations. A better and more precise definition is, "One who offers to carry goods for any person between certain termini or on a certain route, and who is bound to carry for all who tender him goods and the price of carriage."

Was the Neaffie a common carrier under either of these definitions? Chief Justice Marshall, in Boyce v. Anderson, 2 Pet. [27 U. S.] 150, says: "The law applicable to common carriers is one of great rigor. Though to the extent to which it has been carried, and in cases to which it has been applied, we admit its necessity and its policy, we do not think it ought to be carried further or applied to new cases." So unless the case of steam-tugs towing boats and their cargoes can be brought strictly within the definition of common carriers, I am not disposed to apply to them the great rigor of the law applicable to common carriers.

Can it be said that the tug-boats plying in the harbor of New Orleans undertake to transport the goods found on the water craft which they take in tow? It appears to me that it is the boat in which the goods are put that undertakes to transport them. The tug only furnishes the motive power. It is like the case of the owner of a wagon laden with merchandise hiring another to hitch his horses to the wagon to draw it from one point to another, the owner of the wagon riding in it, and having charge of the goods. In such a case, could it be claimed with any show of reason that the owner of the team was a common carrier? The reason of the law which imposes upon the common carrier such rigorous responsibility fails in such a case.

The tug-boats plying in New Orleans harbor do not receive the property into their custody, nor do they exercise any control over it other than such as results from the towing of the boat in which it is laden. They neither employ the master and hands of the boat towed, nor do they exercise any authority over them beyond that of occasionally requiring their aid in governing the flotilla.

The boat, goods and other property remain in charge and care of the master and hands of the boat towed. In case of loss by fire or robbery, without any actual default on the part of the master or crew of the tow-boat, it can be hardly contended they would be answerable, and yet carriers would be answerable for such loss.

That tow-boats are not common carriers has been held in the following cases: Caton v. Rumney, 13 Wend. 387; Alexander v. Greene, 3 Hill, 9; Wells v. Steam Nav. Co., 2 Comst. [2 N. Y.] 204; Pennsylvania, D. & Md. Steam Nav. Co. v. Dandridge, 8 Gill & J. 248; Leonard v. Hendrickson, 18 Pa. St. 40.

In Vanderslice v. The Superior [Case No. 16,843], Mr. Justice Kane held a steam tow-boat liable as a common carrier; but when the case came before the circuit court, Mr. Justice Grier said he could not assent to the doctrine.

I am aware that a contrary doctrine has been applied by the supreme court of Louisiana to steam-tugs towing between the city of New Orleans and the mouth of the Mississippi river. These tow-boats are distinguishable from those plying in the harbor of New Orleans; but if it were otherwise, I think the weight of authority and reason is with those who hold tow-boats not to be common carriers.

Holding, then, that the Neaffie was not a common carrier, and that she was bound only for ordinary diligence and care, and that the testimony shows such diligence and care on the part of the master of the Neaffie, it follows that the libel must be dismissed at the costs of the libelant. The cross libel of claimants, not being supported by any proof, is also dismissed. Libels dismissed.